# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) No. 12 cv 4839 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| JENNIFER SMITH, BEVERLY SMITH PULLIAM, AUDREY SMITH LEWIS, DIANE SMITH ATIVIE, and DAVID ALI SMITH, | )<br>)<br>)<br>) |
| Defendants. | ) |

## Memorandum Opinion and Order

On January 16, 2013, Magistrate Judge Arlander Keys filed his report and recommendation concerning plaintiff Metropolitan Life Insurance Company's ("MetLife") motion to enforce the settlement agreement in this case. Judge Keys recommends granting MetLife's motion to enforce the settlement agreement.

Pursuant to Federal Rule of Civil Procedure 72(b)(3) "the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3). This Court has reviewed MetLife's motion to enforce the settlement agreement, the relevant briefs, Judge Keys' report, defendants Jennifer Smith and Beverly Smith Pulliam's objections thereto, MetLife's memorandum opposing defendants' objections, and the transcript of the settlement agreement entered in the court record, this Court adopts Judge Keys' report and recommendation.

1

Judge Keys' report and recommendation includes an extensive factual background of the events at issue and the settlement proceedings over which Judge Keys presided. Therefore, this Court adopts as its own the factual events in Judge Keys' report and recommendation.

**Background**

At the time of her death on September 2, 2010, Anna Smith, was covered by a Group Life Insurance Plan policy administered by MetLife in the amount of $14,000. MetLife filed this interpleader action seeking declaratory judgment as to whom the policy proceeds should be paid because there are serious questions as to the proper beneficiaries and a disagreement among Anna Smith's five adult children. The dispute here highlights a division among the siblings, pitting two sisters (defendants Jennifer Smith and Beverly Smith Pulliam) against sisters Audrey Smith Lewis, Diane Smith Ativie and brother David Ali Smith over the disbursement of the proceeds of their mother's insurance policy.

Judge Keys held two settlement conferences. The first attended only by Jennifer Smith and Beverly Smith Pulliam and the second by all defendants. Counsel for MetLife appeared at both settlement conferences. On September 10, 2012, at the conclusion of the second settlement conference, all parties agreed on the record that MetLife would waive the legal fees which it had incurred and that it would deduct the $427.38 in court fees, leaving a total of $13,572.67 for distribution. It was also agreed that, Jennifer Smith and Beverly Smith Pulliam would be reimbursed from that amount for $4,951.50 for their mother's burial expenses that they paid. The remaining $8,620.67 would be divided equally among the five siblings ($1,724.13 each).

Although not required to do so under ERISA law, MetLife agreed to pay interest on the entire $14,000. At the time of the settlement conference, however, MetLife could not provide the exact rate of interest, but estimated it to be between 1.5% and 2.5%. In return, all parties agreed

that all claims against MetLife arising out of this lawsuit would be extinguished and that the case would be dismissed with prejudice. Judge Keys verified the agreement on the record at the end of the settlement conference on September 10, 2012. (Dkt. #40, Transcript of Proceedings – Settlement Statement before Magistrate Judge Keys). Counsel for MetLife drafted a settlement agreement and sent it to each of the defendants for their signatures. Only Jennifer Smith and Beverly Smith Pulliam have not signed the agreement.

On December 17, 2012, MetLife filed a Motion to Enforce the Settlement Agreement to which it attached letters from Jennifer Smith and Beverly Smith Pulliam requesting the precise interest rate and the dates of calculation (Group Exhibit A) and a letter dated November 28, 2012, from MetLife to all the siblings stating that MetLife would "voluntarily pay 0.5% interest on the principal sum of $13,572.17 ($14,000 minus $472.83 in court costs), calculated from the 45th day after death (October 17, 2010) through the date the parties confirmed the settlement of this matter in Court" [September 10, 2012]. (Dkt. #27-2, Ex. B). Here, there is a slight variance in the record with respect to the calculation of interest. While the November 28, 2012, letter states that interest will be calculated on the principal sum of $13,572.17 ($14,000 minus $472.83 in court costs), the Agreed Order for Dismissal with Prejudice prepared by MetLife, attached as Exhibit C to MetLife's Motion to Enforce the Settlement states that MetLife is authorized to disburse $14,000 plus interest, less MetLife's costs of $472.83. (Dkt. #27-2, Ex. C). The draft Agreed Order for Dismissal with Prejudice is consistent with the transcript from the settlement conference, when, in response to a direct inquiry from Judge Keys, counsel for MetLife stated that interest would be calculated on the whole $14,000. (Dkt. #40, at p. 4:7-11).

On December 21, 2012, Judge Keys held a hearing on the motion to enforce the settlement, at which both Jennifer Smith and Beverly Smith Pulliam asserted that the Release

3

drafted by MetLife did not reflect the agreement because the interest rate was different and therefore they would not sign the agreement. (Dkt. #41). It appears that Jennifer Smith and Beverly Smith Pulliam believe the interest rate should be 9% based on state law.

**Discussion**

As noted above, this Court reviews objections to a magistrate judge's determination *de novo*. This "de novo determination" does not require a new hearing, but simply means that we must give "fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer,* 47 F.3d 922, 925 n.8 (7th Cir. 1995)(citation omitted). Jennifer Smith and Beverly Smith Pulliam object to Judge Key's report and recommendation to enforce the settlement agreement on the basis that Illinois law should govern the application of interest rather than the provisions of ERISA under which the case was brought; that the agreed interest rate was between 1.5% and 2.5% and was to be applied to the whole $14,000 before deductions.

A settlement agreement is a contract and therefore state contract law applies for determining enforceability. *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 338 (7th Cir. 2000). An oral agreement to settle a lawsuit is enforceable under both federal and Illinois law. *Taylor v. Gordon Flesch Co., Inc.,* 793 F.2d 858, 862 (7th Cir. 1986). "Under Illinois law an oral settlement agreement is enforceable if 'there is offer, acceptance, and a meeting of the minds as to the terms.'" *TRT Transp., Inc. v. Aksoy*, 506 Fed. Appx. 511, 513 (7th Cir. 2013) (quoting *Lewis v. Sch. Dist. #70*, 648 F.3d 484, 486 (7th Cir. 2011), and citing *Kim v. Alvey, Inc*., 322 Ill. App. 3d 657, 749 N.E.2d 368, 378, 255 Ill. Dec. 267 (Ill. App. Ct. 2001)). "Ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract." *Pritchett v. Asbestos Claims Mgmt. Corp*., 332 Ill. App. 3d 890, 897 (Ill. App. Ct. 2002).

Here, the record supports all the elements of a valid oral contract. In fact, there is no dispute as to any material terms. On September 10, 2012, Judge Keys memorialized the settlement agreement on the record following two settlement conferences. It is clear from the transcript that all parties understood that the MetLife policy was for $14,000 and the agreement was only for determining distribution. The parties agreed that MetLife would waive its attorneys' fees of $2,604.43 and deduct from the total only its court costs of $427.38. After which, Jennifer Smith and Beverly Smith Pulliam would be awarded $4,951.50 to cover the expenses they incurred for their mother's burial. The remaining $8,620.67 was to be divided equally among the five siblings ($1,724.13). In exchange for a release of all claims against MetLife arising out of this lawsuit and dismissal with prejudice, MetLife agreed to pay interest on the entire $14,000 despite interest not being required under ERISA law. Equally clear from the transcript of the settlement statement was that the precise amount of interest was yet to be determined by MetLife, but which MetLife estimated would be between 1.5% and 2.5% interest. Judge Keys queried each party at the close of the settlement statement on the record whether this was the agreement and each party, including Jennifer Smith and Beverly Smith Pulliam stated that it was the agreement.

This Court finds that the precise rate of interest was not a material term. Nothing in the record suggests that the agreement was contingent upon the rate of interest. The material terms are now and were then that MetLife would deduct its court costs; that Jennifer Smith and Beverly Smith Pulliam would receive the burial expenses; that the remainder would be divided equally; that interest at MetLife's current rate would be paid on the total $14,000 and then divided equally among the five siblings; and the parties would release all claims and dismiss the case with prejudice.

5

MetLife's counsel negotiated the settlement in good faith, including waiving his own fees and his client voluntarily paying interest despite not being required to do so. It is clear from the record that the range of interest rates that counsel for MetLife stated on the record were only an estimate. The parties agreed on the record that the precise interest rate was to be determined by MetLife once counsel had an opportunity to confer with his client as to the current rate. A contract "'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof *** to ascertain what the parties have agreed to do.'" *Academy Chicago Publishers*, 144 Ill. 2d 24, 29, 578 N.E.2d 981, 983 (Ill. 1991) (quoting *Morey v. Hoffman*, 12 Ill. 2d 125, 131, 145 N.E.2d 644, 647-48 (Ill. 1957)). The fact that the precise rate of interest was left open and turned out to be lower than was anticipated does not invalidate an otherwise enforceable agreement. A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement is insufficient. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir. 1986).

This Court accepts Judge Keys' report and recommendation and finds that the parties entered into a valid oral agreement to settle. The $14,000 MetLife insurance policy is to be disbursed according to the agreement as follows:

- the interest rate of 0.5% is to be calculated on the whole $14,000 and the interest is to be divided equally among the five siblings;
- the interest shall be calculated from 45 days after the insured Anna Smith's death until the date of the settlement on September 10, 2012;
- MetLife is awarded the court costs in the amount of $427.38;
- Jennifer Smith and Beverly Smith Pulliam are awarded $4,951.50;
- the remaining $8,620.67 is to be divided equally among the five siblings;

- all claims against MetLife arising out of this lawsuit are released and the case is dismissed with prejudice.

IT IS SO ORDERED.

Date:   September 13, 2013          Entered: _____
                                           United States District Judge